UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                        )
BRIAN GOODRICH, PATRICIA                )
GOODRICH, INDIVIDUALLY AND AS           )
MOTHER AND NEXT FRIEND OF               )
S.M.G. AND S.L.G.,                      )
                      Plaintiffs,       )      CIVIL ACTION
                                        )      NO. 15-cv-40030-TSH
v.                                      )
                                        )
CEQUENT PERFORMANCE                     )
PRODUCTS, INC., TRIMAS                  )
CORPORATION, CIMLINE, INC.,             )
PLYMOUTH INDUSTRIES, INC.,              )
And GARLOCK EQUIPMENT CO.,              )
INC.,                                   )
                      Defendants.       )
_____)
```

**FINDING AND ORDER ON DEFENDANTS JOINT
MOTION FOR SUMMARY JUDGMENT (Docket No. 85)
AND PLAINTIFF'S MOTION TO EXCLUDE
EXPERT WITNESS TESTIMONY (Docket No. 88)**

**January 16, 2018**

**HILLMAN, D.J.**

## Introduction

Cimline Inc. and Garlock Equipment Co., Inc. design, manufacture, and sell the MAGMA 110 Asphalt Melter. In April 2013, Plaintiff was changing the oil on his MAGMA 110 Asphalt Melter when it collapsed on him causing serious injuries. The Plaintiff has filed suit against the Defendants seeking monetary damages. The First Amended Complaint ("Complaint") alleges negligence (Count I), and breach of the express and implied warranties of merchantability (Count II) against Garlock Equipment Company ("Garlock"). It further alleges negligence (Count XI), and breach of the express and implied warranties of merchantability (Count XII) against Cimline,

1

Inc. ("Cimline").[1] Plaintiff does not oppose the motion for summary judgment as to Defendant Plymouth Industries ("Plymouth") and therefore Plymouth's motion is granted. Additionally, Plaintiff does not oppose dismissal of any express warranty claims.

## Facts

Defendant Garlock Equipment Co. ("Garlock") purchased Defendant Cimline, Inc., ("Cimline") (collectively referred to as "Defendants") in 1992 to manufacture and sell asphalt melters. One of the products Defendants designed, manufactured and sold is the MAGMA 110 Asphalt Melter/Applicator ("Melter"). The Melter is used to seal cracks in asphalt and other hard pavement-type surfaces.

The Melter is attached to a trailer which is equipped with a jack assembly system. The jack assembly system has two parts; a steel pivot-tube mounted plate and a detachable jack. The pivot-tube mounted plate is permanently welded to the trailer unlike the detachable jack, which is used to hold the trailer elevated above ground. The detachable jack is secured to the pivot-tube by a pivot pin fastened to the freestanding jack with a chain.

Defendants sell the Melter with a Bulldog jack, which is manufactured by Cequent Performance Products ("Cequent").[2] Cequent publishes and distributes the following warnings with their Bulldog jacks *inter alia*

1. Never allow installation or use of this product by anyone without providing them with these instructions; and
2. Secure the load, vehicle and trailer from rolling (by blacking wheels)…; and
3. If this product has a pivot tube mount, make certain the pivot pin is fully inserted through both; and

---

[1] The Complaint includes three counts of loss of consortium against Garlock and Cimline on behalf of Plaintiff's wife and two children. These claims are not addressed in the Motion for Summary Judgment and therefore are not discussed in this Order and Memorandum.
[2] Cequent Performance Products and Trimas Corporation were also named as defendants in this matter. The counts against them were terminated on July 22, 2016.

2

      4. Operator and bystanders should never position any part of their body under any portion of this product or the load being supported

(the "Bulldog Warning").

Cimline publishes and distributes an owner's manual with the Melter (the "Safety Manual"). The Safety Manual does not include the Bulldog Warning, or any warning relating to the jack-assembly or hazards of placing a body underneath the Melter while elevated by the jack. There are no warnings on the Melter or the Bulldog jack instructing the user to pin the jack before use in order to be safely operated. Additionally there are no instructions stating that the Bulldog jack is the only jack that should be used with the Melter. Richard Stoffels, Defendants safety engineer,[3] testified that as long as a pin is used, any jack with the appropriate rated capacity that fits into the pivot-tube mounting is acceptable.[4] As safety engineer, Stoffels is responsible for the design and safety of the Melter. Since Garlock purchased Cimline, no hazard safety analysis on the jack assembly system of the Melter has been conducted. Furthermore, there is no documentation showing that a hazard safety analysis was ever conducted on the Melter before Garlock purchased Cimline.

The Melter can last up to ten years but the oil needs to be changed approximately every 250 hours. The only way to change the oil is to lift the Melter using the detachable jack, and crawl underneath the machine.

Brian Goodrich ("Plaintiff") purchased a Melter in May 2006. Prior to the incident that gave rise to this claim, he owned a seal-coating company and worked in the seal-coating industry. After storing the Melter for the winter of 2012-13, on April 22, 2013, Plaintiff brought it from

---

[3] Stoffels testified that he is not a licensed engineer but a few credits shy of a bachelor's degree in engineering.
[4] The rated capacity refers the weight the jack is able to sustain, in the present case, 5,000 pounds.

storage to his garage for maintenance. He used a Bobcat machine to transfer the Melter, which already had a jack, presumably a replacement jack (the "Replacement Jack") affixed in the pivot tube mount. Plaintiff supported the Melter with the unpinned Replacement Jack, which had a bent footplate. Plaintiff then proceeded to crawl underneath the Melter to change the oil as required. While attempting to remove the oil pan drain plug, the trailer disconnected from the jack and fell on top of the Plaintiff. Plaintiff suffered permanent injuries including but not limited to permanent disfigurement of his face and skull, permanent blindness in one eye, total and permanent loss of vocational ability, loss of sexual function and loss of even remedial cognitive function.

## **Standard**

A court shall grant summary judgment if the moving party shows, based on the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The factual dispute must be both "genuine" and "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, (1986). An issue is "genuine" when the evidence allows for a reasonable fact finder to resolve the point in favor of the nonmoving party and is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994).

The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It can meet its burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) *aff'd*, 442 F.3d 7 (1st Cir. 2006) (quoting *Celotex*, 477 U.S. at 325). Throughout its review of motion for summary judgment, the court shall view the facts in the light most favorable to the nonmoving party. *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002).

**Discussion**

*Defective Product's Manufacturer Identified*

The parties dispute what the injury-causing product is in the present case. "The threshold requirement at any products liability action is the identification of the injury-causing product and its manufacturer." *Santiago v. Sherwin-Williams Co.*, 782 F. Supp. 186, 188 (D. Mass. 1992) (citing *Patent v. Abbot Labs*, 386 Mass. 540, 571, 437 N.E.2d 171 (1982)). Defendants argue that since the Replacement Jack is the defective product, and since the manufacturer of the Replacement Jack has not been identified, any claim based on the Replacement Jack's design must be dismissed.

The Plaintiff articulates that the Melter (with the detachable jack assembly) is the defective and dangerous product and that, but for the detachable jack design, Plaintiff would not have suffered his injuries. It is undisputed that Defendants designed, sold, and manufactured the Melter therefore Defendants have failed to establish that the manufacturer of the defective product is unidentified and that they are entitled to summary judgment.

*Sophisticated User Doctrine*

The sophisticated user doctrine has been adopted "as a defense to both negligent failure to warn and failure to warn under breach of warranty" actions. *Carrel v. National Cord & Braid Corp.*, 447 Mass. 431, 441 (2006). The relevant inquiry is the injured party's level of sophistication. *Hoffman v. Houghton Chemical Corp.*, 434 Mass, 524, 630 (2001). While this doctrine may be applicable in this case, it is an issue that should be determined by the fact finder. *Genereux . American Beryllia Corp.*, 577 F.2d 350, 366 (1st Cir. 2009). In fact, as the Defendants point out, the Supreme Judicial Court of Massachusetts explained

> The sophisticated user defense is an application of the established principle that a manufacturer may avoid liability for failing to warn someone of a risk or hazard which he appreciated to the same extent as a warning would have provided. It

5

> applies where a warning will have little deterrent effect, and it *allows a fact-finder to determine that no such duty [to warn] was owed*.

*Carrel*, 447 Mass. at 441, 852 N.E.2d 100. (emphasis added). Defendants have failed to establish that they are entitled to summary judgment, as a matter of law based on the sophisticated user doctrine.

### *Proximate Cause*

Cause in fact and proximate causation are required to establish a claim for breach of implied warranty of merchantability and negligence.[5] *See Staelens v. Dobert*, 318 F.3d 77, 79 (1st Cir. 2003); *See Luvanski v. Coleco Industries, Inc*., 929 F.2d 42, 48 (1st Cir. 1991). To show proximate cause, the plaintiff must show that the harm suffered was one that was reasonably foreseeable as a result of the defendants conduct.  See Restatement (Second) of Torts § 435(2). However,

> [w]hen a user unreasonably proceeds to use a product which he knows to be defective and dangerous, he violate[s] that duty [to act reasonably] and relinquishes the protection of the law…the user's negligence does not prevent recovery except when he unreasonably uses a product that he knows to be defective and dangerous.

*Correia v. Firestone Tire and Rubber Co*., 388 Mass. 342, 355-356, 446 N.E.2d 1033 (1983).

Contrary to Defendants assertion that Plaintiff sustained his injuries as a result of his unreasonable decision to use the Replacement Jack with a bent footplate and without the pin to secure, I find that there is a genuine dispute of material fact as to whether or not using the Replacement Jack was unreasonable. There is a factual dispute as to whether or not the use of a jack with a bent footplate was unreasonable.  Additionally there is a dispute as to whether or not Plaintiff was aware that the Replacement Jack was unpinned and

---

[5] As stated previously, Plaintiff does not oppose summary judgment on any express warranty claims therefore, only claims of implied warranty are discussed.

whether or not a reasonable consumer would know that using an unpinned jack was dangerous or defective. The record shows that Defendants provided no instruction that the pin was required when using the jack, or warning that failure to pin the jack could result in injury.

I find the lack of warning and instructions with regards to use of the jacking system, especially considering the warnings and instructions provided for other "obvious" perceived dangers, provide a factual dispute in which a reasonable fact finder could infer that the Plaintiff's use of the unpinned jack was reasonably foreseeable.

## Conclusion

For the foregoing reasons, the Defendants Joint Motion for Summary Judgment (Docket No. 85) is ***denied*** as to Defendants Cimline and Garlock and is ***granted*** as to Defendant Plymouth.

Pursuant to Fed. R. Civ. P. 37(c)(1), the Plaintiff's motion to strike [88] is hereby ***granted*** insofar as paragraphs 33-39 of the Statement of Material Facts L.R. 56.1 contained in the Joint Motion for Summary Judgment [85].[6] The Plaintiff's request to preclude the Defendants from offering expert testimony at trial, to strike the pleading in its entirety and award reasonable costs is hereby ***denied***.

**SO ORDERED.**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**

---

[6] Had paragraphs 33-39 of the Defendants Statement of Material Facts L.R. 56.1 not been stricken, the Court would have found that genuine issues of material facts existed and denied the Joint Motion for Summary Judgment.